**FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-17-0000540**
**31-OCT-2023**
**07:52 AM**
**Dkt. 76 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

RENE O. CAMPOS, Plaintiff-Appellant/Appellant, v.
PLANNING COMMISSION OF THE COUNTY OF KAUA'I,
COUNTY OF KAUA'I PLANNING DEPARTMENT, and
COUNTY OF KAUA'I, Defendants-Appellees/Appellees.

NO. CAAP-17-0000540

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 5CC16-1-000132)

OCTOBER 31, 2023

HIRAOKA, PRESIDING JUDGE, WADSWORTH AND MCCULLEN, JJ.

OPINION OF THE COURT BY MCCULLEN, J.

Plaintiff-Appellant/Appellant Rene O. **Campos** appeals

from the Circuit Court of the Fifth Circuit's[1] (1) June 13, 2017

Final Judgment, and (2) April 19, 2017 Findings of Fact and

Conclusions of Law, in favor of Defendants-Appellees/Appellees

---

[1] The Honorable Kathleen N.A. Watanabe presided.

the County of Kauaʻi, the County of Kauaʻi **Planning Department**, and the **Planning Commission** of the County of Kauaʻi.

Campos owns real property "described as Unit A of the Seacliff Plantation - Lot 25 Condominium Project Located in [Kīlauea], Kauaʻi . . . containing an area of 5.0 acres" (**Property**).[2] Findings of Fact (**FOF**) 1.[3] This project is comprised of Campos's Property and two other "apartments with improvements thereon." FOF 1.

Campos's "Property is located in a State Land Use District . . . Agricultural District, the Kauaʻi County General Plan Agriculture Land Use Designation Area, Special Management Area . . . , the North Shore Development Plan Area, and the Open Space, Special Treatment Scenic/Ecological . . . Resources District." FOF 2. "Further, a portion is in the **Comprehensive Zoning Ordinance** [(or **CZO**)] Agriculture District and another portion is in the CZO Open District." FOF 2 (emphasis added). According to Campos, the soil on the Property is rated B, C, and D.

This secondary appeal arises from the Planning Commission's revocation of a **Provisional Nonconforming Use**

---

[2] According to the "Declaration of Condominium Property Regime Seacliff Plantation - Lot 25" recorded with the Hawaiʻi Bureau of Conveyances, the entire project was 12.41 acres with "Apartments" 1 and 2 being five acres each and "Apartment" 3 being 2.41 acres. (Some formatting altered.)

[3] Planning Commission's July 27, 2016 Findings of Fact, Conclusions of Law, and Decision and Order.

**Certificate**, issued to Campos, allowing the structure on the Property (**Guest House**) to be used as a single-family transient vacation rental.  On appeal, Campos asserts that the revocation violated Kauaʻi County's Comprehensive Zoning Ordinance, his grandfather rights under the United States and Hawaiʻi Constitutions, his due process right, and its own rules.[4]

We affirm because use of the Guest House, as originally built, violated the zoning permit obtained by the prior owner, and consequently there was no prior legal use to be grandfathered.  We also hold that Campos was afforded due process and waived the argument that the Planning Commission violated its own rules.

## I.   BACKGROUND

The background in this case spans over twenty years, starting with the Property's prior owner.

### A.   Prior Owner

In 1998, the prior owner of the Property, Simon **Potts**, applied to the Planning Department for a zoning permit.  On the application, Potts indicated that the lot size was 12.407 acres, the zoning was "Ag/Open STR," and the existing land use had

---

[4] Campos did not include a points of error section in his opening brief as required by Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4).  We construe Campos's "Statement of Questions Presented for Decision" as his points of error.  (Formatting altered.)

Campos does not challenge the Planning Commission's FOF or conclusions of law (**COL**) pursuant to HRAP Rule 28(b)(4).  See Wisdom v. Pflueger, 4 Haw. App. 455, 459, 667 P.2d 844, 848 (1983) ("If a finding is not properly attacked, it is binding; and any conclusion which follows from it and is a correct statement of law is valid.").

"AG/Farm Dwelling."  (Formatting altered.)  Under "DESCRIPTION OF PROPOSED USE, IMPROVEMENT, ALTERATION, AND/OR CONSTRUCTION," Potts wrote "CONSTRUCTION OF GUEST COTTAGE."

Architect Daniel Moran (**Architect Moran**) prepared **Zoning Plans** for the Guest House, which were submitted as part of Potts's zoning permit application.  FOF 3.  The Zoning Plans indicated that the Guest House would consist of 484 square feet of floor area, *without* a kitchen.  FOF 3.

The Planning Department issued Potts a Class I zoning permit in July 1998, **Zoning Permit** No. Z-437-98, to construct the Guest House, and indicated the occupancy type as "OTHER." After a permit was issued for a Gazebo in September 1998, no other zoning permits were approved for the Property.  FOF 4.

About two years later, in 2000, the Department of Public Works, Building Section, approved **Building Plans**, also submitted by Architect Moran, for the Guest House and issued a **Building Permit.**  FOF 5.  However, the Building Plans differed from the Zoning Plans because the Building Plans *included* a kitchen for the same Guest House.  FOF 5.

In 2006, Campos purchased the Property from Potts, and began operating it as a transient vacation rental, "and continued operation of the Noni Orchard situated thereon under the same independent contractor as" Potts.  FOF 6.

**B.   Zoning Ordinance Nos. 864 (2008) and 904 (2010)**

As explained *infra* in more detail, in 2008, the County adopted Ordinance No. 864, prohibiting transient vacation rentals that were not within the **Visitor Destination Area**,[5] pursuant to Kauaʻi County Code (**KCC**) Title IV, Chapter 8, Article 17. Ordinance No. 864, however, "also established a procedure for any owner, operator, or proprietor of a single-family transient vacation rental operating outside of" the Visitor Destination Area, as of March 7, 2008, to obtain a nonconforming use certificate to continue operating as a transient vacation rental.  KCC § 8-17.10(b) (2010); FOF 33.

Campos (providing a Texas address) sent the Planning Department a letter authorizing his attorney in Līhuʻe and his brother, David Campos (also providing a Texas address), "to act as [his] agents for the filing and processing of the Application for a Use Permit and Class III Zoning Permit, as well as any other land-use permits and approvals relative to said application."

About two years later, in 2010, Ordinance No. 904 amended the grandfather provision established by Ordinance No. 864 and addressed single-family transient vacation rentals operating on lands designated agricultural.

---

[5]  Ordinance No. 864 defined Visitor Destination Area as "those areas designated as Visitor Destination Areas on County of Kauaʻi zoning maps." Campos does not assert that the Property was in a Visitor Destination Area.

**C.    Campos's Application for a Nonconforming Use Certificate**

On October 15, 2010, following the adoption of Ordinance No. 904, the Planning Department received Campos's application to register his Guest House identified as the "Hawaiian Romantic Cottage" as a transient vacation rental, and requesting a nonconforming use certificate.  FOF 8.  Campos's application identified the unit as a "studio, 1 bath SFR."  FOF 8.  Campos represented the unit as a "single family vacation rental" in the State Land Use Agricultural District.  FOF 8.

Campos also represented that "Building permit number(s) Z-437-98 was approved on 6-19-98 for all structures on the property and there were no expansions, alterations, improvements, or uses contrary to State and County land use and planning laws" and "[t]here were not any legal expansion or improvements made on the property after March 7th 2008."  FOF 9.  The application included an "As Built Drawing" of the Guest House, again by Architect Moran, showing a kitchen.  FOF 10.

In his application, Campos requested:  (1) a Special Permit pursuant to Hawaiʻi Revised Statutes (**HRS**) § 205-6 and Hawaiʻi Administrative Rules Title 15, Subtitle 3, Chapter 15, Subchapter 12 as "is required for the proposed use of the Subject Property, which is within the State Land Use Agricultural District, in conjunction with a transient vacation rental use of the dwelling on the Subject Property"; (2) a Use

Permit pursuant to "CZO Chapter 8, Article 20," "as it is not a generally permitted use (although single family dwellings are generally permitted under CZO Section 8-7.2(a)(15), the short-term rental may trigger the need for a Use Permit)"; and (3) a Class IV Zoning Permit pursuant to "CZO Sections 8-7.7(4), 8-8.7, and 8-19.6."

The Planning Department "provisionally approved" Campos's application, and issued the Provisional Nonconforming Use Certificate. FOF 11.

Planning Department personnel inspected the Guest House, and determined it indeed contained a kitchen, "but there was no conversion permit to change 'the guest house to a legal single family residence as mandated by Ordinance No. 904 nor were the interior kitchen improvements authorized by permit.'" FOF 12.

As a result, in a December 22, 2011 letter, the Planning Department revoked Campos's Provisional Nonconforming Use Certificate, and instructed Campos to stop using the Guest House as a transient vacation rental or face fines "up to $10,000 and/or up to $10,000 per day for each day the violation persists." FOF 12.

**D.  Campos's Appeal to the Planning Commission**

In January 2012, Campos appealed the Planning Department's decision revoking the Provisional Nonconforming Use

Certificate, and requested a public hearing. FOF 14. In March 2014, a Planning Department Inspection/Research Report confirmed Campos was still operating his Guest House as a transient vacation rental. FOF 16. As of November 2015, the Guest House was being advertised online as containing "a kitchen with a refrigerator, stove top burner, oven, dishwasher, blender, ice maker, coffee maker and toaster." FOF 17.

Campos's contested case hearing was held in November 2015. The Hearing Officer issued his report, recommending the Planning Commission deny Campos's appeal and affirm the Planning Department's revocation of the Provisional Nonconforming Use Certificate because "there was no conversion permit to convert [Campos's] Guest House with a kitchen to a legal single family dwelling unit as mandated by Ordinance No. 904, nor were the interior kitchen improvements authorized by permit." The Hearing Officer also recommended fining Campos $25,000 for operating his Guest House as a single-family transient vacation rental outside the Visitor Destination Area.

After holding oral arguments, the Planning Commission agreed with the Hearing Officer's recommendations, and issued its Findings of Fact, Conclusions of Law, Decision and Order affirming the Planning Department's decision.

**E.    Campos's Appeal to the Circuit Court**

Campos appealed to the circuit court.  The circuit court heard arguments, and entered its Decision and Order affirming the Planning Commission's Decision and Order.

Regarding the fines imposed, the circuit court stated that from December 2011, "Campos knew that he was instructed by the Planning Department to cease and desist use of the Guest House as a [transient vacation rental] and terminate any further advertising of the Subject Property for [transient vacation rental] use."  "However, as late as the morning of the Hearing [Campos] was still advertising the Guest House on the internet as the [transient vacation rental] 'Hawaiian Romantic Cottage.'"

The circuit court further determined that "[f]or over four (4) years, Campos has failed to comply with the request of the Planning Department to cease and desist use of the Guest House as a [transient vacation rental] and terminate any further advertising of the Subject Property for [transient vacation rental] use."  "Although the Planning Department could have imposed a fine of up to $10,000 per day for each day the aforesaid violation existed, . . . instead it requested a fine 'of at least $25,000 [payable] to the County of Kauaʻi for the continued illegal operation of a [transient vacation rental] without a [nonconforming use certificate].'"

The circuit court then concluded that

> Campos has not met his burden to establish by a preponderance of the evidence that the Planning Director's decision to impose a fine of at least $25,000 for violation of the provisions of the CZO by operating a [transient vacation rental] outside of the [Visitor Destination Area] without a [nonconforming use certificate] was based upon an erroneous finding of a material fact, arbitrary or capricious, or an abuse of . . . discretion because he did not offer any evidence to contest that decision.

On June 13, 2017, the circuit court entered its final judgment affirming the Planning Commission's Decision and Order, revoking Campos's Provisional Nonconforming Use Certificate and imposing a $25,000.00 fine.

Campos timely appealed to this court.

## II.   STANDARDS OF REVIEW

### A.   Secondary Appeals

> Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91-14(g) . . . to the agency's decision.

Flores v. Bd. of Land & Nat. Res., 143 Hawaiʻi 114, 120, 424 P.3d 469, 475 (2018) (citations omitted).

> Pursuant to HRS § 91-14(g) (2012 & Supp. 2016),
>
> Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> >   (1)   In violation of constitutional or statutory provisions;
> >
> >   (2)   In excess of the statutory authority or jurisdiction of the agency;
> >
> >   (3)   Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Additionally, an "agency's decision carries a presumption of validity and [an] appellant has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences." Kauaʻi Springs, Inc. v. Plan. Comm'n of Cnty. of Kauaʻi, 130 Hawaiʻi 407, 417, 312 P.3d 283, 293 (App. 2013) (citations omitted).

**B.   Construction of a County Ordinance**

The construction of an ordinance is a question of law reviewed de novo. See Coon v. City & Cnty. of Honolulu, 98 Hawaiʻi 233, 245, 47 P.3d 348, 360 (2002).

### III.   DISCUSSION

Campos contends the Planning Commission's revocation of the Provisional Nonconforming Use Certificate violated the Comprehensive Zoning Ordinance, his grandfather rights under the United States and Hawaiʻi Constitutions, his due process right, and the Planning Commission's own rules.

11

## A.    Relevant Legal Authority

### 1.    Hawaiʻi Constitution

The Hawaiʻi Constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law . . . ."  Haw. Const. art. I, § 5; see U.S. Const. amend. V (providing same).

The Hawaiʻi Constitution also mandates that our state "conserve and protect agricultural lands, promote diversified agriculture, increase agricultural self-sufficiency and assure the availability of agriculturally suitable lands," and requires the legislature to "provide standards and criteria to accomplish the foregoing."  Haw. Const. art. XI, § 3.

### 2.    Statutory Law

#### a.    HRS § 46-4, County Zoning

The counties within our state "derive their zoning powers from HRS § 46-4(a) . . . , referred to as the Zoning Enabling Act."  Kaiser Hawaii Kai Dev. Co. v. City & Cnty. of Honolulu, 70 Haw. 480, 483, 777 P.2d 244, 246 (1989).  "Zoning in all counties shall be accomplished within the framework of a long-range, comprehensive general plan prepared or being prepared to guide the overall future development of the county."  HRS § 46-4(a) (Supp. 2016).

The powers granted in this section must be "liberally construed" in the counties' favor to promote orderly development

according to the comprehensive general plan to ensure the

greatest benefit for the whole of Hawaiʻi by regulating zoning

and building:

> The powers granted herein shall be liberally construed in favor of the county exercising them, and in such a manner as to promote the orderly development of each county or city and county in accordance with a long-range, comprehensive general plan to ensure the greatest benefit for the State as a whole.  This section shall not be construed to limit or repeal any powers of any county to achieve these ends through zoning and building regulations[.]

HRS § 46-4(a).  And in accordance with the Hawaiʻi Constitution,

the counties cannot prohibit "continued lawful use" of a

building or premises at the time an ordinance takes effect:

> Neither this section nor any ordinance enacted pursuant to this section shall prohibit the continued lawful use of any building or premises for any trade, industrial, residential, agricultural, or other purpose for which the building or premises is used at the time this section or the ordinance takes effect[.]

HRS § 46-4(a) (emphasis added).

### b.    HRS Chapter 205, Land Use Commission

"While the counties are empowered to enact zoning

ordinances, HRS chapter 205 clearly limits the permissible uses

allowed within an agricultural district."  Save Sunset Beach

Coal. v. City & Cnty. of Honolulu, 102 Hawaiʻi 465, 482, 78 P.3d

1, 18 (2003).  "Within agricultural districts . . . accessory

agricultural uses and services described in sections 205-2 and

205-4.5 may be further defined by each county by zoning

ordinance."  HRS § 205-5(b) (2017).

13

HRS § 205-2(d) (Supp. 2012) lists seventeen uses or activities agricultural districts "shall include," and transient vacation rentals is not expressly listed.

HRS § 205-4.5(a) (Supp. 2006 & 2016) delineates the permissible uses in agricultural districts rated class A or B. One permissible use in an agricultural district is a farm dwelling, which was defined as "a single-family dwelling located on and used in connection with a farm[.]"  HRS § 205-4.5(a)(4) (Supp. 2006 & 2016).  Of the fourteen permissible uses within the agricultural district enumerated in subsection (a), none expressly included transient vacation rentals.  HRS § 205-4.5(a) (Supp. 2006).

Any use not expressly allowed in subsection (a) is prohibited, unless an HRS § 205-6 (2001 & Supp. 2016) special permit or an HRS § 205-8 (2001) nonconforming use certificate is obtained.  See HRS § 205-4.5(b) (Supp. 2016).  Thus, any use permitted by a county not expressly allowed in HRS § 205-4.5(a), or by virtue of HRS §§ 205-6 or 205-8, conflicts with the statutory regime.  Save Sunset Beach Coal., 102 Hawaiʻi at 482, 78 P.3d at 18.

The "burden to prove that a nonconforming use is valid is on the owner, occupant or user, who must prove that a lot, a structure, a use, a dwelling unit, or parking or loading was legally established as it now exists."  Save Diamond Head Waters

LLC. v. Hans Hedemann Surf, Inc., 121 Hawaiʻi 16, 26, 211 P.3d 74, 84 (2009) (cleaned up and emphasis added).

   3.   **KCC, Comprehensive Zoning Ordinance**

KCC Title IV, Chapter 8 is Kauaʻi County's Comprehensive Zoning Ordinance.

   a.   **Article 1, General Provisions**

The purpose of the Comprehensive Zoning Ordinance is in part, to "[regulate] the use of buildings, structures and land for different purposes," "maintain the concept of [Kauaʻi] as 'The Garden Isle[,'] thus assuring that any growth will be consistent with the unique landscape and environmental character of the Island," and "protect, maintain and improve the agriculture potential of land located in the County."  KCC § 8-1.2(b), (d), and (k) ((1987 & Supp. 1988 through Supp. 2006) (approved June 30, 2006)).

   "The Agriculture District establishes means by which land needs for existing and potential agriculture can be both protected and accommodated, while providing the opportunity for a wider range of the population to become involved in agriculture by allowing the creation of a reasonable supply of various sized parcels."  KCC § 8-1.3(h) ((1987 & Supp. 1988 through Supp. 2006) (approved June 30, 2006)).

Article 1 ((1987 & Supp. 1988 through Supp. 2006) (approved June 30, 2006)) also set forth the following relevant definitions:

| | |
|---|---|
| **Dwelling:** | "means a building or portion thereof designed or used exclusively for residential occupancy and having all necessary facilities for permanent residency such as living, sleeping, <u>cooking</u>, eating and sanitation." |
| **Dwelling, Single-Family Detached:** | "means a building consisting of only one (1) dwelling unit designed for or occupied exclusively by one (1) family." |
| **Dwelling Unit:** | "means any building or any portion thereof which is designed or intended for occupancy by one (1) family or persons living together or by a person living alone and providing complete living facilities, within the unit for sleeping, recreation, eating and sanitary facilities, including installed <u>equipment for only one (1) kitchen</u>." |
| **Guest House:** (Amended 2008) | "means a building with a floor area of no more than five hundred (500) square feet, <u>contains no kitchen</u>, is used for dwelling purposes by guests, and is located on a parcel of at least nine thousand (9,000) square feet that contains one (1) or more dwelling units." |

| | |
|---|---|
| **Kitchen:** | "means any room used or intended or designed to be used for cooking and preparing food." |
| **Land Use:** | "includes 'building use' and 'use of building.'" |
| **Non-conforming Use:** | "means a <u>lawful use</u> of a building or land existing at the time of the adoption of this Ordinance or as a result of any subsequent amendment, and which does not comply with the regulations for the zoning district in which it is located." |
| **Transient Vacation Rentals: (1987) (Removed in 2008 by Ordinance No. 864)** | "means <u>rentals in a multi-unit building</u> for visitors over the course of one (1) or more years, with the duration of occupancy less than thirty (30) days for the transient occupant." |
| **Transient Vacation Rental: (2008)** | "means a <u>dwelling unit</u> which is provided to transient occupants for compensation or fees, including club fees, or as part of interval ownership involving persons unrelated by blood, with a duration of occupancy of one hundred eighty (180) days or less." |
| **Use:** | "means the purpose for which land or building is arranged, designed or intended, or for which either land or building is or may be occupied or maintained." |

| | |
|---|---|
| **Use permit:** | "means a permit issued under the definite procedure provided in this Chapter allowing a certain use which is conditionally permitted for the particular district." |

KCC § 8-1.5 (emphases added); 3C Shambie Singer, Sutherland Statutory Construction § 77:7 (8th ed. 2022) ("When a statutory definition declares what a term 'means,' any meaning not stated is excluded, because the term 'means' denotes an exhaustive definition.  Conversely, the word 'include' ordinarily is a term of enlargement rather than limitation.").

Importantly, "[n]o building, structure or portion thereof shall be erected, or altered, nor shall any structure, land or premises be used except in the manner indicated and only for the uses permitted in the districts in which the building, structure, land or premises is located."  KCC § 8-2.2(d)(1) ((1987 & Supp. 1988 through Supp. 2006) (approved June 30, 2006)).

### b.    Article 7, Agricultural Districts

The purpose of Article 7 was in part to "protect the agriculture potential of lands within the County of [Kaua'i] to insure a resource base adequate to meet the needs and activities of the present and future" and "limit and control the dispersal of residential and urban use within agriculture lands."  KCC §§ 8-7.1(a) and (c) ((1987 & Supp. 1988 through Supp. 2006)

18

(approved June 30, 2006)). The KCC listed permitted uses and structures, which included "Single family detached dwellings."[6] KCC § 8-7.2(15) ((1987 & Supp. 1988 through Supp. 2006) (approved June 30, 2006)). The KCC then listed over ten structures and uses in agricultural districts that require a *use* permit, including "[a]ny other use or structure which the Planning Director finds to be similar in nature to those listed in this section and appropriate to the District."[7] KCC § 8-7.3(a)(14)

---

[6] **KCC § 8-7.2** ((1987 & Supp. 1988 through Supp. 2006) (approved June 30, 2006)) listed the uses and structures permitted in agricultural districts:

        (1)   Accessory structures and uses
        (2)   Aquaculture
        (3)   Diversified agriculture
        (4)   Forestry
        (5)   Grazing
        (6)   Historic sites
        (7)   Intensive agriculture
        (8)   Livestock, poultry, and piggeries . . .
        (9)   Minor food processing related to agricultural
              products
        (10)  Orchards and nurseries
        (11)  Outdoor recreation
        (12)  Pet keeping and raising . . .
        (13)  Public parks and monuments
        (14)  Resource management
        (15)  Single family detached dwellings
        (16)  Specialized agriculture
        (17)  Undeveloped campgrounds
        (18)  Warehousing, storage and packing of plant products
        (19)  Wildlife management

[7] **KCC § 8-7.3(a)** (1987) listed the uses and structures in agricultural districts requiring a use permit:

        (1)   Animal hospitals
        (2)   Cemeteries
        (3)   Churches, temples and monasteries
        (4)   Commercial recreation
        (5)   Construction and worker temporary housing
        (6)   Development campgrounds
        (7)   Golf courses

(continued . . .)

((1987 & Supp. 1988 through Supp. 2006) (approved June 30, 2006)). Transient vacation rentals were not on either list, and the 2008 amendments pursuant to Ordinance No. 864 did not change KCC §§ 8-7.2 or 8-7.3.

"No construction or other development for which standards are established in this Chapter shall be undertaken within any Agriculture District except in accordance with a valid <u>zoning</u> permit." KCC § 8-7.7 ((1987 & Supp. 1988 through Supp. 2006) (approved June 30, 2006)) (emphasis added). Zoning permits were required as follows:

> The following zoning permits, in accordance with Article 19, shall be required for the following activities:
>
> (1) **Class I Permit.** A Class I Permit shall be obtained for construction or development on a parcel where:
>
> (A) the parcel is not located in a Constraint District or a Special Treatment District and is not large enough to qualify for more than one (1) dwelling unit under the density provisions of this Article; and

---

(. . . continued)

> (8) Mineral extraction and quarries
> (9) Pet keeping and raising proposed within five hundred (500) feet of any Residential District
> (10) Poultry and piggeries when to be located within three thousand (3000) feet of any Use District
> (11) Private and public utility facilities
> (12) Schools and day care centers
> (13) Transportation terminals
> (14) Any other use or structure which the Planning Director finds to be similar in nature to those listed in this section and appropriate to the District.

In 2010, Ordinance No. 903 amended KCC § 8-7.3(a) to include "Farm worker housing" as (a)(7), thereby moving items (a)(7) to (a)(14) included in the 1987 version of KCC § 8-7.3(a) down by one. See County of Kauaʻi, Ordinance No. 903 (Aug. 16, 2010); KCC § 8-7.3(a) (1987).

    (B)  the construction or development does not require a Use Permit or a Variance Permit.

   (2)  **Class II Permit.** A Class II Permit shall be obtained for construction or development on a parcel where:

    (A)  the parcel is not located in a Constraint District or a Special Treatment District and is qualified for more than one (1) dwelling unit; and

    (B)  the construction or development does not require a Use Permit or a Variance Permit.

   (3)  **Class III Permit.** A Class III Permit shall be obtained for construction or development on a parcel where:

    (A)  for construction or development of a parcel for which a Class I or Class II Permit would otherwise be obtainable except that the parcel is located in a Constraint District or a Special Treatment District.

   (4)  **Class IV Permit.** A Class IV Permit shall be obtained for construction or development on a parcel where:

    (A)  for construction or development for which a Class I, II, or III Permit would otherwise be obtainable except that a variance or a use permit is required.

   (5)  To obtain any permit, the applicant shall show compliance with the Standards established in this Article and shall submit a plot plan and other information as required by Sec. 8-3.8(d).

KCC § 8-7.7 (formatting altered).

   **c.**  **Article 17, Time Sharing and Transient Vacation Rentals**

   Article 17 of the KCC addressed Transient Vacation Rentals.

   By Ordinance No. 436 (September 22, 1982), "[e]xcept as provided in this section, time share units, time share plans and transient vacation rentals are prohibited." KCC § 8-17.1 ((1987

& Supp. 1988 through Supp. 2006) (approved June 30, 2006)).

Ordinance No. 864 did not amend KCC § 8-17.1.

By Ordinance No. PM-255-92 (August 13, 1992), Article 17 limited transient vacation rentals to certain areas:

> Subject to the limitations contained in Section 8-17.5, transient vacation rentals are allowed:
>
> (a)  In Hotels in Resort or Commercial Districts; and
>
> (b)  In Resort Districts or Residential Districts when such districts are located within the visitor destination areas of [Po'ipū], [Līhu'e], [Wailua-Kapa'a] or Princeville, as more particularly designated on County of [Kaua'i] Visitor Destination Area maps.

KCC § 8-17.3 ((1987 & Supp. 1988 through Supp. 2006) (approved June 30, 2006)) (formatting altered).  KCC § 8-17.5 provided that "[n]othing in this Article shall impair the use in a project of . . . an existing transient vacation rental, when such project is not located within the visitor destination areas described in Section 8-17.2."  KCC § 8-17.5(a) ((1987 & Supp. 1988 through Supp. 2006) (approved June 30, 2006) (repealed 2008)).

Ordinance No. 864 (2008) amended Chapter 8 by revising KCC §§ 8-17.3 and 8-17.5 to apply to multi-family transient vacation rentals and adding §§ 8-17.8 to 8-17.10 to specifically address single-family transient vacation rentals.  Ordinance No. 904 (2010) amended particular provisions "relating to previously implemented grandfathering provisions for existing single-family transient vacation rentals outside the Visitor Destination Area . . . ."

KCC § 8-17.8 provided in part that "[n]otwithstanding any underlying zoning designation and with the exception of properties on the National or State Register of Historic Places, single-family transient vacation rentals are prohibited in all areas not designated as Visitor Destination Areas."  KCC § 8-17.8(a)  (2008 and 2010).

KCC § 8-17.9 provided in part that "[n]o single-family transient vacation rental shall operate outside a Visitor Destination Area without a Nonconforming Use Certificate obtained under Section 8-17.10."  KCC § 8-17.9(b)  (2008 and 2010).

KCC § 8-17.10 addressed "Nonconforming Use Certificates for Single-Family Vacation Rentals."

**KCC § 8-17.10(a)** explained that the purpose of KCC § 8-17.10 was to identify and register single-family transient vacation rentals which have been in lawful use and to allow them to continue by obtaining a nonconforming use certificate:

> The purpose of this section is to provide a process to identify and register those single-family transient vacation rentals as nonconforming uses which have been in lawful use prior to the effective date of this ordinance and to allow them to continue subject to obtaining a nonconforming use certificate as provided by this section.

KCC § 8-17.10(a) (2010) (emphases added).

KCC § 8-17.10(b) provided that "[t]he owner, operator or proprietor of any single-family transient vacation rental which operated outside of a Visitor Destination Area prior to

March 7, 2008 shall obtain a nonconforming use certificate for single family vacation rentals."  KCC § 8-17.10(b) (cleaned up).

**KCC § 8-17.10(c)** prohibited issuing a nonconforming use certificate unless the use as a single-family rental was legal under the Comprehensive Zoning Ordinance:

> No nonconforming use certificate shall be issued by the Planning Director <u>unless the use as a single-family rental is a legal use under the Comprehensive Zoning Ordinance</u>, and the applicant provides a sworn affidavit and demonstrates to the satisfaction of the Planning Director that a dwelling unit was being used as a vacation rental on an ongoing basis prior to March 7, 2008.  The Planning Director, in making the decision, shall take into consideration, among other things, the following guidelines:
>
> (1)  The applicant had a State of Hawaiʻi General excise tax license and transient accommodations tax license for the purpose of the lawful operation of single-family transient vacation rentals for a period long enough to demonstrate actual payment of taxes.
>
> (2)  That prior to the effective date of this ordinance, applicant had deposits for reservations by transient guests in exchange for compensation for use of subject property as a vacation rental.
>
> (3)  That applicant had transient guests occupy subject property in exchange for compensation prior to the effective date of this ordinance, with a pattern of consistency that evidences an ongoing and lawful enterprise.

KCC § 8-17.10(c) (2010) (formatting altered).

**KCC § 8-17.10(d)** permitted nonconforming use certificates for land in agricultural districts if the single-family transient vacation rental was built before June 4, 1976 or the applicant obtained an HRS § 205-6 special permit:

Applications for nonconforming use certificates for single-family transient vacation rentals located on land designated "Agricultural" pursuant to [HRS Chapter 205] shall be made within sixty (60) days of the effective date of this ordinance. If an operator as defined under Section 8-17.10(c) fails to apply for a nonconforming use certificate within sixty (60) days of the effective date of this ordinance, then the Planning Director shall assess an administrative late application processing fee of Fifteen Hundred ($1,500.00) Dollars at filing. A nonconforming use certificate may be issued for a single-family transient vacation rental located on land in the State of Hawaii's land use agricultural district if:

(1) It was built prior to June 4, 1976, or

(2) The Applicant has obtained a special permit under [HRS §] 205-6 which specifically permits a vacation rental on the subject property.

(A) An application for a special permit shall include verification by the Applicant that the farm dwelling unit was being used as a vacation rental on an ongoing basis in accordance with Section 8-17.10(c).

(B) An application for a special permit pursuant to [HRS §] 205-6 and Chapter 13 of the Rules of Practice and Procedures of the Planning Commission that is deemed complete by the Planning Director must be filed within one (1) year of the effective date of this ordinance. Upon completion of the application, the Planning Director shall issue a provisional certificate that will allow the transient vacation rental to operate. The provisional certificate shall be null and void after the Planning Commission or the Land Use Commission makes a decision upon the application.

(C) In addition to the Special Permit standards set forth in [HRS §] 205-6 and Chapter 13 of the Rules of Practice and Procedure of the Planning Commission, the Planning Commission may only grant a special permit if, prior to March 7, 2008: (1) the property upon which the transient vacation rental is located had a registered agricultural dedication pursuant to the guidelines set forth in the County of [Kauai's] Department of Finance Real Property Tax Division Agricultural Dedication Program Rules; (2) a bona fide agricultural operation existed, as shown by State General Excise Tax Forms and/or Federal Income Tax Form 1040 Schedule F filings; or (3) the Planning Commission finds that the size, shape, topography, location or surroundings of

the property, or other circumstances, did not allow an applicant to qualify for an agricultural dedication pursuant to the County of [Kauai's] Department of Finance Real Property Tax Division Agricultural Dedication Program Rules or inhibited intensive agricultural activities[.]

(D)   If the application for the special permit is granted, then the transient vacation rental operation shall be subject to conditions imposed by the Planning Commission or the Land Use Commission.

(E)   If the application for special permit is denied, then the nonconforming use certificate shall not be issued and the transient vacation rental must cease operation.

KCC § 8-17.10(d) (2010) (formatting altered and emphases added).

KCC § 8-17.10(e) placed the burden of proof on the owner:

The owner, operator, or proprietor shall have the burden of proof in establishing that the use is properly nonconforming based on the following documentation which shall be provided to the Planning Director as evidence of a nonconforming use:  records of occupancy and tax documents, including all relevant State of Hawai‘i general excise tax filings, all relevant transient accommodations tax filings, federal and/or State of Hawai‘i income tax returns for the relevant time period, reservation lists, and receipts showing payment.  Other reliable information may also be provided. Based on the evidence submitted, the Planning Director shall determine whether to issue a nonconforming use certificate for the single-family transient vacation rental.

KCC § 8-17.10(e) (2008 and 2010).

KCC § 8-17.11 addressed the "Enforcement Against Illegal Transient Vacation Rentals":

(a)   In addition to other penalties provided by law, including but not limited to Section 8-17.6, Section 8-24.1 and the Planning Commission Rules, as amended, the Planning Director, or any member of the public who has duly obtained standing pursuant to rules promulgated by the commission, may initiate proceedings to revoke or modify the terms of a nonconforming use certificate pursuant to the Rules of Practice and Procedures of the Planning Commission, as amended.  Violations of conditions of approval or providing

26

> false or misleading information on the application or in any information relating thereto at any time during the application process shall be grounds for revocation or cease and desist orders.
>
> (b) Advertising of any sort which offers a property as a transient rental shall constitute prima facie evidence of the operation of a transient vacation rental on said property and the burden of proof shall be on the owner, operator, or lessee to establish that the subject property is not being used as a transient vacation rental or that it is being used for such purpose legally. If any unit is found to be operating unlawfully, penalties established in Section 8-17.6 and Section 8-24.1 shall apply.

KCC § 8-17.11 (2010) (cleaned up). The penalty for a violation was "not less than $500 nor more than $10,000 for each offense," and "[i]f any person fails to remove such violation within one month, such person shall be subject to a new and separate violation for each day the violation continues to exist." KCC § 8-17.6 ((1987 & Supp. 1988 through Supp. 2006) (approved June 30, 2006)).

### d. Article 19, Zoning Permits

Article 19 addressed *zoning* permits, providing that "[n]o person shall undertake any construction or development or carry on any activity or use, for which a zoning permit is required by this Chapter, or obtain a building permit for construction, development, activity or use regulated by this Chapter, without first obtaining the required zoning permit." KCC § 8-19.1 ((1987 & Supp. 1988 through Supp. 2006) (approved June 30, 2006) (repealed 2012)) (emphases added). Article 19 also set forth the application process for obtaining a zoning permit and the appeals process for challenging the Planning

27

Director's decision.  KCC §§ 8-19.2 to 8-19.7 ((1987 & Supp. 1988 through Supp. 2006) (approved June 30, 2006) (repealed 2012)).

### e.    Article 20, Use Permits

Article 20 addressed *use* permits.  "The purpose of the 'use permit' procedure is to assure the proper integration into the community of uses which may be suitable only in specific locations in a district, or only under certain conditions, or only if the uses are designed, arranged or conducted in a particular manner, and to prohibit such uses if the proper integration cannot be assured."  KCC § 8-20.1 ((1987 & Supp. 1988 through Supp. 2006) (approved June 30, 2006) (repealed 2012)).

"No person shall undertake any construction or development, or carry on any activity or use for which a Use Permit is required by this Chapter, or obtain a building permit for construction, development, activity or use for which a Use Permit is required by this Chapter, without first obtaining a Use Permit."  KCC § 8-20.2 ((1987 & Supp. 1988 through Supp. 2006) (approved June 30, 2006) (repealed 2012)) (emphases added).  Article 20 also set forth the application procedure for obtaining a use permit and when an application can be resubmitted following a denial.  KCC §§ 8-20.3 to 8-20.7 ((1987 & Supp. 1988 through Supp. 2006) (approved June 30, 2006) (repealed 2012)).

**B.    The Planning Commission's Decision Did Not Violate the KCC or Campos's Rights**

**1.    KCC's Comprehensive Zoning Ordinance**

Campos asserts that "the Planning Commission's decision violates the express provisions and intent of CZO Article 17." (Formatting altered.)  In particular, Campos takes issue with "the County's insistence that in order to apply for [a nonconforming use certificate] the structure must be a 'legal' structure," and argues that "neither the express provisions in KCC Article 17 nor the express intent of KCC Article 17 require or support this interpretation."  Campos further asserts that "it is undisputed that the guest cottage was a single family dwelling" because it contained a kitchen.  (Formatting altered.)

"[Z]oning laws and ordinances are strictly construed, as they are in derogation of the common law, and their provisions may not be extended by implication."  Waikiki Marketplace Inv. Co. v. Chair of Zoning Bd. of Appeals of City & Cnty. of Honolulu, 86 Hawaiʻi 343, 354, 949 P.2d 183, 194 (App. 1997) (citation and internal quotation marks omitted).  "The key to interpreting a zoning statute is to ascertain and effectuate legislative intent as expressed in the statute."  3C Singer, Sutherland Statutory Construction § 77:7; see Kauai Springs, Inc. v. Plan. Comm'n of Cnty. of Kauaʻi, 133 Hawaiʻi 141, 163, 324 P.3d 951, 973 (2014) ("When construing a statute, our foremost

29

obligation is to ascertain and give effect to the intention of the legislature which is to be obtained primarily from the language contained in the statute itself.") (citation omitted).

"It is fundamental in statutory construction that each part or section of a statute should be construed in connection with every other part or section so as to produce a harmonious whole." Id. (citation omitted). "We must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose." Id. (citation omitted).

We begin our analysis with KCC § 8-17.10(a), which explained the purpose of the "Nonconforming Use Certificates for Single-Family Vacation Rentals" section was "to provide a process to identify and register those single-family transient vacation rentals as nonconforming uses which have been in lawful use prior to the effective date of this ordinance and to allow them to continue subject to obtaining a nonconforming use certificate as provided by this section." (Emphasis added.) "This purpose is consistent with the requirements of HRS § 46-4(a) as well as the constitutional protection provided to property owners with vested rights to pre-existing lawful uses of their property." Robert D. Ferris Tr. v. Plan. Comm'n of Cnty. of Kauaʻi, 138 Hawaiʻi 307, 313, 378 P.3d 1023, 1029 (App. 2016).

Next, KCC § 8-17.10(c) provided, "No nonconforming use certificate shall be issued by the Planning Director unless the

use as a single-family rental is a <u>legal use</u> under the Comprehensive Zoning Ordinance, and the applicant provides a sworn affidavit and demonstrates to the satisfaction of the Planning Director that a <u>dwelling unit</u> was being used as a vacation rental on an ongoing basis prior to March 7, 2008 . . . ."[8]  (Cleaned up and emphases added.)  This section also protected preexisting lawful use by exempting those legal single-family rentals from the mandatory prohibition on issuing nonconforming use certificates for transient vacation rentals on property outside the Visitor Destination Areas.  <u>See</u> <u>Leslie v. Bd. of Appeals of Cnty. of Hawaiʻi</u>, 109 Hawaiʻi 384, 393, 126 P.3d 1071, 1080 (2006) (explaining that the term "shall," "is generally imperative or mandatory") (citation omitted).

Finally, KCC § 8-17.10(d) provided the Planning Department with the discretion to issue a nonconforming use certificate for a single-family transient vacation rental located on agricultural land under certain circumstances:

---

[8]  In Campos's argument, he asserts that COL 4 is incorrect.  COL 4 states in relevant part, "[i]n order to qualify for the [nonconforming use certificate], the 'dwelling unit . . . [must be] in compliance with all State and County land use and planning laws . . . [as of] the time of application for' that nonconforming use certificate" and cites KCC § 8-17.10(b). (Formatting altered.)

This quoted language was present in KCC § 8-17.10(c) (in effect from March 7, 2008 to August 16, 2010), but was not in KCC § 8-17.10(b) and was deleted by Ordinance No. 904.  Any error, however, does not require vacating the circuit court's decision because KCC §§ 8-17.10(a) and (c) nonetheless require that the single-family rental be a prior lawful and legal use under the Comprehensive Zoning Ordinance.

> A nonconforming use certificate may be issued for a single-family transient vacation rental located on land in the . . . land use agricultural district if:
>
> (1) [i]t was built prior to June 4, 1976, or
>
> (2) [t]he Applicant has obtained a special permit under [HRS §] 205-6 which specifically permits a vacation rental on the subject property.
>
> > (A) An application for a special permit shall include verification by the Applicant that the farm <u>dwelling unit was being used as a vacation rental on an ongoing basis in accordance with Section 8-17.10(c)</u>. . . .

KCC § 8-17.10(d) (emphasis added).  An application for a special permit requires that the dwelling unit was being used in accordance with KCC § 8-17.10(c), which includes being "a legal use under the Comprehensive Zoning Ordinance[.]"

In short, when viewing KCC § 8-17.10 as a whole within the context of its purpose, a nonconforming use certificate for a transient vacation rental outside of the Visitor Destination Area could be issued only when the prior use as a single-family transient vacation rental was lawful under the Comprehensive Zoning Ordinance.  Thus, on land (agricultural or not) outside the Visitor Destination Area, prior *lawful* use was protected.

With this in mind, we turn to KCC § 8-19.1, which provided that "[n]o person shall . . . obtain a building permit . . . without first obtaining the required zoning permit."  Similarly, KCC § 8-20.2 provided that "[n]o person shall . . . obtain a building permit . . . without first obtaining a Use

32

Permit" where a use permit is required.  As such, no person is allowed to obtain a building permit for construction or use without first obtaining the required zoning permit and, if applicable, use permit.

We pause to reiterate that nonconforming use means "a lawful use of a building or land existing at the adoption of" the ordinance, transient vacation rental means a "dwelling unit . . . provided to transient occupants for compensation," a dwelling or dwelling unit contains facilities for cooking or a kitchen, and a guest house has no kitchen.

Here, there was no single-family transient vacation rental in lawful use, pursuant to the zoning laws, to identify or register as a nonconforming use.

The Planning Commission found that Potts was issued a Zoning Permit to build the Guest House in July 1998 on the Property.  FOF 3.  Potts was also issued a zoning permit to build a Gazebo a few months later, in September 1998, and "[n]o other zoning permits were issued by the Planning Department for the Subject Property after approval of the Gazebo."  FOF 4.

In 2000, the Public Works Department approved the Building Plans for the Guest House, however, the Building Plans differed from the Zoning Plans as the Building Plans showed a kitchen in the Guest House.  FOF 5.  In 2010, the As-Built Plans submitted also depicted a kitchen in the Guest House.  FOF 10.

33

In 2011, a field inspection of the Guest House confirmed there was a kitchen. FOF 12. And in 2015, Campos advertised the Guest House as containing "a kitchen with a refrigerator, stove top burner, oven, dishwasher, blender, ice maker, coffee maker and toaster." FOF 17.

The Zoning Permit allowed for a guest house (i.e., building with no kitchen for use of guests) on the Property. In other words, the Guest House was supposed to be used as a place for guests, not as a single-family dwelling or a dwelling unit. See KCC § 8-1.5. Per the zoning code, Potts was prohibited from obtaining a building permit to construct or use a structure with a kitchen if he did not first obtain the required zoning permit. See KCC § 8-19.1. A kitchen built in contravention to the Zoning Plans and Zoning Permit obtained did not convert use of the Guest House into a lawful use as a single-family dwelling.

Thus, contrary to Campos's contention, there was no single-family transient vacation rental in lawful use because his use of the Guest House as a single-family transient vacation rental was not a lawful use of the Guest House as permitted by the Zoning Permit.

2.   **Grandfather Rights**

Second, Campos asserts that the "Planning Commission's decision violates [his] grandfather rights under the U.S. and [Hawaiʻi] State Constitutions and HRS section 46-4." (Formatting altered.) He argues that "there is no evidence to dispute [his] testimony and records that he was operating a [transient vacation rental] on the Subject Property prior to March 7, 2008" and that the "government cannot stop an existing nonconforming use by the adoption of an ordinance prohibiting that use."

The Hawaiʻi Constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law . . . ." Haw. Const. art. I, § 5; see U.S. Const. amend. V (providing same). HRS § 46-4 grants zoning power to the counties, and in line with the Hawaiʻi Constitution, provides that "[n]either this section nor any ordinance enacted pursuant to this section shall prohibit the continued lawful use of any building or premises for any trade, industrial, residential, agricultural, or other purpose for which the building or premises is used at the time this section or the ordinance takes effect[.]" HRS § 46-4(a)(12) (Supp. 2016) (emphasis added).

Campos rented his Guest House as a single-family dwelling to transient vacationers. Campos insists that the Guest

House is really a single-family dwelling because it has a kitchen.

However, as discussed above, the Zoning Permit issued by the Planning Department allowed for a guest house (i.e., a building with no kitchen for use by guests) on the Property. Because Campos did not use the Guest House as permitted by the Zoning Permit, it was not being used lawfully. Thus, there was no lawful single-family transient vacation rental use which could be grandfathered.

### 3. Due Process Rights

Third, Campos contends that "the Planning Department is violating [his] due process rights as well as its own past practice of allowing [nonconforming use certificate] applicants to correct identified violations." (Formatting altered.) Campos argues that the "presence or absence of structural violations was not a factor" and "[i]f structural violations were found, the applicants were told to fix them." Campos explains that the "issue is whether or not the County allowed an applicant to correct a violation prior to issuing the [nonconforming use certificate], not whether the guest house itself was the [transient vacation rental]."

Campos also argues that the Planning Commission's "application of this 'new' requirement that the structures cannot be in violation of the KCC is a rule that cannot be enforced." Campos further states "there is nothing in the record to even remotely suggest that the Planning Commission's new rule requiring the structures in which a transient vacation rental is located to be free from violations was properly promulgated."

The "requirements of due process are flexible and depend on many factors, but 'there are certain fundamentals of just procedure which are the same for every type of tribunal and every type of proceeding,' including those before administrative agencies." Mauna Kea Anaina Hou v. Bd. of Land & Nat. Res., 136 Hawaiʻi 376, 389, 363 P.3d 224, 237 (2015) (citations and brackets omitted). "The basic elements of procedural due process are notice and an opportunity to be heard at a meaningful time and in a meaningful manner." Id. Also, "due process of law generally prohibits decisionmakers from being biased, and more specifically, prohibits decisionmakers from prejudging matters and the appearance of having prejudged matters." Id. Substantive due process "guards against arbitrary and capricious government action." DW Aina Leʻa Dev., LLC v. Bridge Aina Leʻa, LLC., 134 Hawaiʻi 187, 219, 339 P.3d 685, 717 (2014) (citation omitted).

Contrary to Campos's claim that the Planning Commission applied a new requirement, the Planning Commission relied on and applied the KCC. As stated, KCC § 8-17.10(a) explained its purpose was "to provide a process to identify and register those single-family transient vacation rentals as nonconforming uses which have been in lawful use prior to the effective date of this ordinance and to allow them to continue subject to obtaining a nonconforming use certificate as provided by this section." (Emphasis added.) In that vein, KCC § 8-17.10(c) provided, "[n]o nonconforming use certificate shall be issued by the Planning Director unless the use as a single-family rental is a legal use under the [CZO], . . ." (Emphasis added.) Campos does not claim KCC § 8-17.10 was not properly promulgated.

Moreover, in revoking Campos's Provisional Nonconforming Use Certificate, the Planning Department notified Campos of the revocation, explained its reasons for the revocation, instructed Campos to discontinue any transient vacation rental use on the Property, and informed Campos of the possible penalties.

Campos appealed this decision and requested a public hearing. A contested case hearing was held, and the Hearing Officer issued a report and recommendation. The Planning Commission heard oral arguments, and issued its Findings of Fact, Conclusions of Law, Decision and Order. Campos then

appealed to the circuit court, which heard oral arguments and entered its Decision and Order affirming the Planning Commission's decision.  Campos was therefore afforded a meaningful opportunity to be heard.

As to Campos's argument that he was not allowed to correct the violation, Campos cites to his Exhibit 33 (plans titled "Renovation + GH to SFR Conversion") and the testimony of his brother.  As an initial matter, Campos does not indicate where in the record he made the application to correct the violation or show that an appeal from the denial of the application is properly before this court.  And Campos does not dispute that his application to convert the Guest House to a single-family dwelling was submitted months after he appealed the Planning Department's revocation of the Provisional Nonconforming Use Certificate.  Thus, this argument is deemed waived.

Even if we considered Campos's argument in the context of this appeal, Campos has not provided this court with any law, ordinance, or rule entitling him to convert his Guest House (that does not comply with the Zoning Permit issued) into a single-family dwelling, and then have that conversion retroactively render the unlawful use of his Guest House into a lawful use as a single-family dwelling.

As stated in an unchallenged finding, Planning Department Enforcement Supervisor Michael Laureta testified that

"in order for the Guest House to be approved as a 'Single-Family Transient Vacation Rental[,]' a public hearing by the [Planning] Commission would be required on [Campos's] Special Permit Application." FOF 22. The Planning Commission also noted that "for this reason, the Planning Department cannot simply allow [Campos] to submit an application at this time for retroactive approval of 'a guest house with a kitchen' as part of Z-437-98."[9] As such, Campos has not shown that denial of an application for "Renovation + GH to SFR Conversion" was a denial of his due process rights.

Based on the record in this case, Campos was afforded notice and ample "opportunity to be heard at a meaningful time and in a meaningful manner." Mauna Kea Anaina Hou, 136 Hawai'i at 389, 363 P.3d at 237. And the Planning Commission's decision was not arbitrary and capricious.

### 4. Fines

Finally, Campos contends that the "County violated its own rules in fining" him. (Formatting altered.) Campos asserts that the "County's own regulations specifically states [sic]

---

[9] The summary of the transcripts from the contested case hearing stated that Campos's attorney, Jonathan Chun, "noted that Mr. Laureta testified earlier that there was another situation with a guest house with a kitchen and questioned if he applied for a [transient vacation rental] to which Mr. Laureta replied that he applied for two [transient vacation rentals], one for the main house and one for the guest cottage." After removal of the kitchen in the guest house, Mr. Chun questioned the Department's recommended approval to which Mr. Laureta replied that "the Commission wouldn't accept two applications. The guest cottage could be used as an accessory bedroom, but couldn't be advertised separately from the main dwelling unit."

that fines can only be assessed after a notice of violation has been issued on the property" and the "record is devoid of any indication that a notice of violation was issued[.]"

The Planning Department argues Campos waived this issue because he raised it for the first time in his reply brief to the circuit court. In his reply on appeal, Campos states the "County ignores the fact that the issue regarding the County's own failure to follow its own rules in fining Campos was raised in the lower court" and cites "Amended RA, Volume 1, Part 2 of 2 at p. 129[,]" which is Campos's reply brief to the circuit court.

Points raised for the first time in a reply brief are deemed waived. See Hawaii Ventures, LLC v. Otaka, Inc. 114 Hawaiʻi 438, 472 n.17, 164 P.3d 696, 730 n.17 (2007) (explaining that Appellant's "point of error is deemed waived for failure to present any argument in its opening brief in the first instance and presenting such arguments in its reply brief to which no answer could be made").

Moreover, Campos's argument to this court consists of one paragraph, which does not specifically identify or quote the rule on which he relies, but instead cites to "Amended RA, Volume 1, Part 1 a of 2 at p. 391." See HRAP Rule 28(b)(8) (requiring the opening brief to provide the "rules pertaining to the points of error set out verbatim"). Campos's one-paragraph

argument also does not analyze how the rules in "Amended RA, Volume 1, Part 1 a of 2 at p. 391" apply to the facts of this case, and does not explain why the December 22, 2011 letter instructing him to stop using the Guest House as a transient vacation rental or face fines "up to $10,000 and/or up to $10,000 per day" was not sufficient notice of the fines he faced.

## IV. CONCLUSION

In sum, Campos fails to show that he is entitled to relief under HRS § 91-14(g).  We thus affirm the circuit court's (1) June 13, 2017 Final Judgment, and (2) April 19, 2017 Findings of Fact, Conclusions of Law, Decision and Order.

On the briefs:

Jonathan J. Chun,
for Plaintiff-
Appellant/Appellant.

Mark L. Bradbury,
for Defendant-
Appellee/Appellee
County of Kauaʻi Planning
Department.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge