**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000573
25-OCT-2024
07:56 AM
Dkt. 54 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

ELIZABETH KENDRICK and JOE CHAULKLIN,
Petitioners-Appellants-Appellees, v.
PLANNING DEPARTMENT OF THE COUNTY OF KAUA'I/
PLANNING COMMISSION OF THE COUNTY OF KAUA'I; DONNA APISA,
in her official capacity as Chairperson of the Planning
Commission,[1] Respondents-Appellees-Appellants.

NO. CAAP-20-0000573

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 5CC181000190)

OCTOBER 25, 2024

HIRAOKA, PRESIDING JUDGE, NAKASONE AND MCCULLEN, JJ.

OPINION OF THE COURT BY MCCULLEN, J.

Respondents-Appellees-Appellants County of Kaua'i, its

**Planning Department** and **Planning Commission**, and Donna Apisa, in

her official capacity as Chair of the Planning Commission,

---

[1] Donna Apisa, the current chair of the Kaua'i County Planning Commission, is substituted for former chairs Sean Mahoney and Glenda Nogami-Streufert under Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 43(c)(1).

(collectively, the **County**) appeal from the Circuit Court of the Fifth Circuit's[2] (1) July 28, 2020 "Findings of Fact and Conclusions of Law, Decision and Order," and (2) August 24, 2020 Final Judgment in favor of Petitioners-Appellants-Appellees Elizabeth **Kendrick** and Joe **Chaulklin**.

The County contends that the circuit court erred in reversing the Planning Commission's November 20, 2018 Findings of Fact, Conclusions of Law, Decision and Order (**Planning Commission's Decision**), which denied as untimely Kendrick and Chaulklin's application to renew their nonconforming use certificate for a transient vacation rental (or **TVR**).[3]

We hold that the circuit court erred in reversing the Planning Commission's Decision.

## I.   BACKGROUND

Prior to 2008, the Kauaʻi County Code (**KCC**) allowed single-family residences to be used as transient vacation rentals.

---

[2]   The Honorable Kathleen N.A. Watanabe presided.

[3]   "'Transient vacation rental' means a dwelling unit which is provided to transient occupants for compensation or fees, including club fees, or as part of interval ownership involving persons unrelated by blood, with a duration of occupancy of one hundred eighty (180) days or less."  Kauaʻi County Code (**KCC**) § 8-1.5 (2008).

## A.    2008 - Ordinance No. 864

In 2008, the County adopted Ordinance No. 864, prohibiting transient vacation rentals outside of the Visitor Destination Area.[4]  KCC Title IV, Chapter 8, Article 17.

The County Council found there was "a compelling need to regulate single-family transient vacation rentals on Kauaʻi" as they "are occurring at a greater rate and inflicting a larger impact on the community of Kauaʻi than was ever anticipated[.]" Ord. No. 864, § 1 (2008).  "Since 2000, out of the 2,050 new residential units, 1,070 have been built for the seasonal homes market and less than half have been for local families to rent (46) or own (936)."  Id.  "This also means that the limited available infrastructure and resources on Kauaʻi, including roads, water, sewer capacity, building materials, and contractor time are being used primarily for expensive second or third homes rather than the primary home needs of local residents." Id.

The County Council's goal was "to promote a high quality of life for all people on this island, to preserve the residential character of neighborhoods, to encourage the

---

[4]  "'Visitor Destination Area or VDA' are those areas designated as Visitor Destination Areas on County of Kauaʻi zoning maps."  Ord. No. 864, § 2 (2008); see also Campos v. Plan. Comm'n, 153 Hawaiʻi 386, 390 n.5, 539 P.3d 170, 174 n.5 (App. 2023) ("Ordinance No. 864 defined Visitor Destination Area as 'those areas designated as Visitor Destination Areas on County of Kauaʻi zoning maps.'").

diversity of incomes and backgrounds that has made Kauaʻi a special place of aloha, and to promote health and safety and the general welfare[.]"  Id.

Although Ordinance No. 864 prohibited transient vacation rentals outside of the Visitor Destination Area, it established a procedure for owners of a lawful transient vacation rental operating outside the Visitor Destination Area to obtain a nonconforming use certificate to continue operating their property as a transient vacation rental.  KCC § 8-17.10(b) (2008).

An owner who obtained a nonconforming use certificate was required to "apply to renew the nonconforming use certificate by July 31 for every year" with proof that certain conditions were met.  KCC § 8-17.10(g) (2008).  "Failure to meet these conditions [would] result in the denial of the application for renewal of the nonconforming use certificates."  KCC § 8-17.10(g)(2).

Kendrick and Chaulklin own real **Property** in Anahola, Kauaʻi, and obtained a nonconforming use certificate, TVNCU #4308.[5]

---

[5]  However, the 2015, 2016, and 2017 renewal applications identified "Ginger Beach House, LLC" as the owner of the Property.

**B.     2010 to 2014 - Amendments to KCC**

In 2010, Ordinance No. 904 amended KCC § 8-17.10 by changing the July 31 due date for renewals to "annually on the date of issuance of the non-conforming use certificate."  KCC § 8-17.10(h) (2010).  This ordinance also made denial automatic stating, "[f]ailure to meet this condition [would] result in the automatic denial of the application for renewal of the nonconforming use certificates."  Id.

In 2013, Ordinance No. 950 added that each application to renew with proof of the excise tax and transient accommodation licenses "shall be received by the Department prior to the expiration date of a held non-conforming use certificate."  KCC § 8-17.10(h)(1) (approved July 23, 2013).[6]

In 2014, Ordinance No. 974 increased the annual renewal fee from $500.00 to $750.00.  KCC § 8-17.10(h) (approved

---

[6]  Upon its approval, Ordinance No. 950 indicated KCC § 8-17.10(h)(1) would read:

> (h)  The owner or lessee who has obtained a nonconforming use certificate under this section shall apply to renew the nonconforming use certificate annually on the date of issuance of the nonconforming use certificate.
>
> (1)  Each application to renew shall include proof that there is a currently valid State of Hawaiʻi general excise tax license and transient accommodations tax license for the Nonconforming use and shall be received by the Department prior to the expiration date of a held non-conforming use certificate.  Failure to meet this condition will result in the automatic denial of the application for renewal of the nonconforming use certificates.

Sept. 30, 2014). Thus, the final version of KCC § 8-17.10(h) as relevant to this case provided:

> (h) The owner or lessee who has obtained a Nonconforming Use Certificate under this Section shall apply to renew the Nonconforming Use Certificate annually on the date of issuance of the Nonconforming Use Certificate.
>
> > (1) Each application to renew shall include proof that there is a currently valid State of Hawaiʻi general excise tax license and transient accommodations tax license for the nonconforming use and shall be received by the Department prior to the expiration date of a held Nonconforming Use Certificate. Failure to meet this condition will result in the automatic denial of the application for renewal of the Nonconforming Use Certificates.
>
> > . . . .
>
> > (3) The applicant shall pay an annual renewal fee of seven hundred fifty dollars ($750.00) which shall be deposited into the County General Fund.

Id. (formatting altered and emphases added).

## C.    2015 - Timely Application

In 2015, Kendrick and Chaulklin timely applied to renew their nonconforming use certificate, with the Planning Department receiving their application on November 25, 2015, ahead of the December 12, 2015 annual renewal date. The application indicated Kendrick's email address was "BETH@VSE.COM." A November 25, 2015 letter from the Planning Department approved the application and explained the nonconforming use certificate was renewed to December 12, 2016. The letter made no mention of a grace period.

### D.   2016 - Warnings and Timely Application

Less than three months later, on February 9, 2016, Mike **Laureta**, Planning Department Program Manager, sent an email to "beth@vse.com" and others warning that untimely or incomplete applications for renewal would not be accepted:

> **Subject**: FW: 2016 TVR Renewal
>
> For the past several years, the Department has strongly encouraged the submittal of **complete** TVR renewal packets at least two months prior to the renewal date.  Last year, there were 6 who missed the deadline, and submitted their renewal packets within 1-30 days **after** the renewal date. This cost them $1,500 + 750.  There were 2 who completely forgot to renew, and are now appealing the forfeiture.
>
> By this email, I am giving fair warning - Ordinance No. 950, Sec. 8-17-10(h)(1) removed the ability to reapply for renewal if you failed to timely renew.  This means - from here going forward, <u>if you're 1 day late, the Department will issue you a forfeiture notice</u>.  If you don't run your business in a professional manner and forget to timely renew, no excuse will be good enough.
>
> If the renewal packet is <u>***incomplete*** beyond the renewal date, the Department will issue a Forfeiture notice</u>.  It's incumbent on the certificate holders to provide all the documents listed on the renewal form - we will no longer chase you for missing documents.  At the time you submit your packet, it had better be complete.  You should all know what is expected during the renewal process, especially those with Special Permits.  This includes a hard copy of all the websites you advertise on, reflecting at a minimum, your TVRNCU number and 24/7 on island contact.
>
> I will be sending this email to all, in groups of maybe 25. So if you get this more than once, you really better not miss a renewal date......

(Ellipsis in original and underline added.)

Kendrick and Chaulklin submitted a timely renewal application on November 8, 2016, ahead of the December 12, 2016 annual renewal date.  On November 16, 2016, the Planning

7

Department approved the renewal application and explained that the nonconforming use certificate was renewed to December 12, 2017.

The renewal letter also advised that renewal applications must be made prior to the annual renewal date or the Planning Department would issue a "Cease & Desist and Notice of Forfeiture":

> Your TVNCU is renewed to **December 12, *2017*** based on the information submitted.  Your file is active and current.  Please be advised that in order to keep your Non-Conforming Use Certificate valid, you must:
>
> 1. Apply for renewal every year, no less than thirty (30) days, ***and up to two months***, prior to the annual renewal date of ***December 12, 2017***, utilizing the most current renewal form on our website, and the renewal fee existing at that time (presently $750).  ***Should your renewal be at least one (1) day late, you will be served with a Cease & Desist and Notice of Forfeiture. Should your renewal be incomplete, it will not be processed and will be returned to you via USPS.  The resubmittal of the complete application must be before the renewal date. The only supporting documents we will accept after the renewal date is your tax documents that are filed on an extension.*** . . .

## E.    2017 – Untimely Application

In 2017, Kendrick submitted an application and a $750.00 check, both dated December 15, 2017, and received by the Planning Department on December 20, 2017.  Because the application was submitted after the December 12, 2017 renewal date, the Planning Department denied the application.

8

Kendrick and Chaulklin admitted their application was submitted "'after the deadline set by the Planning Department.'" They contested the denial of their untimely renewal application.

## F.   Contested Case Hearing, Oral Arguments, and Circuit Court Appeal

Following a contested case hearing, the hearing officer made findings and conclusions, and recommended the Planning Commission affirm the Planning Department's decision denying the renewal application because Kendrick and Chaulklin "have not met their burden of proof by a preponderance of the evidence establishing that this decision of the Planning Department was based on an erroneous finding of a material fact, or the Planning Director had acted in an arbitrary or capricious manner, or had manifestly abused his discretion."

The Planning Commission heard oral arguments, and issued its findings and conclusions, and decision and order affirming the Planning Department's decision for the reasons set forth by the hearing officer.

Kendrick and Chaulklin appealed to the circuit court. Following oral arguments, the circuit court reversed the Planning Commission and remanded the case to the Planning Department "to timely accept and promptly process Appellants'

renewal application for 2017 and affected subsequent years." [7]
The County appealed.

## II.   STANDARDS OF REVIEW

In a secondary appeal, the circuit court reviews the agency decision de novo under the right/wrong standard.  See Dao v. Zoning Bd. of Appeals of Honolulu, 144 Hawaiʻi 28, 38, 434 P.3d 1223, 1233 (App. 2019).

Hawaiʻi Revised Statues (**HRS**) § 91-14(g) (Supp. 2019) provides:

> (g)  Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1)  In violation of constitutional or statutory provisions;
>
> (2)  In excess of the statutory authority or jurisdiction of the agency;
>
> (3)  Made upon unlawful procedure;
>
> (4)  Affected by other error of law;

---

[7]  The County also challenges various findings in the circuit court's July 28, 2020 "Findings of Fact and Conclusions of Law, Decision and Order." On the other hand, Kendrick and Chaulklin assert all the circuit court's findings not challenged are binding on this court.

However, when a circuit court acts as an appellate court, it may not make its own findings of fact.  Sierra Club v. Bd. of Land & Nat. Res., 154 Hawaiʻi 264, 284, 550 P.3d 230, 250 (App. 2024), cert. granted, No. SCWC-22-0000516, 2024 WL 3378462 (July 11, 2024) (explaining the circuit court reviewing an agency's decision under Hawaiʻi Revised Statues (**HRS**) § 91-14 acts as an appellate court and does not make findings of fact, cannot consider the weight of the evidence, or pass upon the credibility of witnesses).

Thus, we do not consider the circuit court's findings of fact, but review the agency's decision pursuant to HRS § 91-14.

> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"In a secondary appeal, '[t]his court's review is further qualified by the principle that the agency's decision carries a presumption of validity and [the party challenging the agency's decision] has the heavy burden of making a convincing showing that the decision is invalid . . . .'" Keep the North Shore Country v. Bd. of Land & Nat. Res., 150 Hawaiʻi 486, 503, 506 P.3d 150, 167 (2022) (quoting Korean Buddhist Dae Won Sa Temple of Haw. v. Sullivan, 87 Hawaiʻi 217, 229, 953 P.2d 1315, 1327 (1998)).

## III.  DISCUSSION

On appeal, the County contends the circuit court "gravely erred in reversing" the Planning Commission's decision. Kendrick and Chaulklin contend denial of their renewal application violated state and county law, and their due process rights.  Here, the circuit court erred because the Planning Commission did not violate state or county law and did not violate Kendrick and Chaulklin's due process rights.

## A.    State and County Laws Were Not Violated

On appeal to the circuit court, Kendrick and Chaulklin asked, "[d]id the Planning Commission violate state statute and

11

county ordinance when it concluded [they] 'forfeited' their [nonconforming use certificate] even though they never discontinued their nonconforming use of the property?" In particular, they argued the Planning Department violated HRS § 46-4(a) (Supp. 2017) and KCC § 8-13.2(a) when it denied their renewal application, challenging the Planning Commission's conclusion of law (**COL**) 15.[8]

In their answering brief on further appeal to this court, they argue there is no finding that they "discontinued use of their nonconforming" transient vacation rental, and

---

[8]  COL 15 states:

> 15.  When keeping in mind the purpose of *Haw. Rev. Stat.* § 46-4 which is to empower the counties to enact zoning ordinances allowing and encouraging the most beneficial use of the land consonant with good zoning practices, and construing it in a manner consistent with that purpose, the zoning mandate of KCC § 8-17.10, as commissioned by *Haw. Rev. Stat.* § 46-4(a), is to be liberally construed to permit the nonconforming use of the Subject Property to continue provided TVNCU #4308 is maintained and registered with the Planning Department pursuant to KCC § 8-17(h). *See generally In the Interest of CM,* 141 Hawaiʻi at 353, 409 P.3d at 757 ("What is clear in one statute [(i.e. KCC § 8-17.10(h))] may be called upon in aid to explain what is doubtful in another [(i.e. *Haw. Rev. Stat.* § 46-4(a))].").  If such registration lapses as in this Contested Case, the nonconforming use is no longer a lawful use because the Subject Property lacks a "Nonconforming Use Certificate for [that] single family vacation rental".  KCC § 8-17.10(b) and *Cf. Waikiki Marketplace. Inv. Co. v. Chair of Zoning of Appeals of the C&C of Honolulu,* 86 Hawaiʻi 343, 356, 949 P.2d 183, 196 (1997) ("[T]he terms 'lawful use' and 'previously lawful,' as used in HRS § 46-4 and the LUO, refer to compliance with previous zoning laws, not the building codes or other legal requirements that may be applicable to the construction or operation of a structure.").

12

assert they used the transient vacation rental "throughout the year prior to its December 12 renewal deadline."

HRS § 46-4 vests counties with their zoning power. Kaiser Haw. Kai Dev. Co. v. City & Cnty. of Honolulu, 70 Haw. 480, 483, 777 P.2d 244, 246 (1989). HRS § 46-4 requires that zoning "shall be accomplished within the framework of a long-range, comprehensive general plan prepared or being prepared to guide the overall future development of the county." HRS § 46-4(a). Each county is allowed to adopt regulations to carry out the purposes of HRS § 46-4 and "shall prescribe rules, regulations, and administrative procedures and provide personnel it finds necessary to enforce this section and any ordinance enacted in accordance with this section." Id.

"The ordinances may be enforced by appropriate fines and penalties, civil or criminal, or by court order at the suit of the county or the owner or owners of real estate directly affected by the ordinances." Id. The zoning powers "shall be liberally construed in favor of the county exercising them, and in such a manner as to promote the orderly development of each county or city and county in accordance with a long-range, comprehensive general plan to ensure the greatest benefit for the State as a whole." Id.

13

Importantly, HRS § 46-4(a) protects the existing lawful use of a building or premises:

> Neither this section nor any ordinance enacted pursuant to this section shall prohibit the continued lawful use of any building or premises for any trade, industrial, residential, agricultural, or other purpose for which the building or premises is used at the time this section or the ordinance takes effect; provided that a zoning ordinance may provide for elimination of nonconforming uses as the uses are discontinued, or for the amortization or phasing out of nonconforming uses or signs over a reasonable period of time in commercial, industrial, resort, and apartment zoned areas only. In no event shall such amortization or phasing out of nonconforming uses apply to any existing building or premises used for residential (single-family or duplex) or agricultural uses.

Id.

Turning to the KCC, Chapter 8 is Kauai's zoning ordinance. Article 13 of the zoning ordinance generally addresses nonconforming structures and uses, and Article 17 of the zoning ordinance specifically addresses transient vacation rentals as nonconforming uses.

Generally, as provided in Article 13, a nonconforming use "may continue to the extent that the use existed on September 1, 1972" but "[i]f any nonconforming use ceases for any reason for [a] continuous period of 12 calendar months or for one season if the use be seasonal, then the use shall not be resumed and any use of the land or building thereafter shall be in full conformity with the provisions of this Chapter." KCC § 8-13.2(a), (b) (2012).

Specifically, as provided in Article 17, nonconforming use certificates for transient vacation rentals may be obtained and renewed annually. KCC § 8-17.10. As discussed above, KCC § 8-17.10 requires an owner "who has obtained a Nonconforming Use Certification under this Section . . . to renew the Nonconforming Use Certificate annually on the date of issuance of the Nonconforming Use Certificate." KCC § 8-17.10(h) (emphasis added).

"Each application to renew . . . shall be received by the Department prior to the expiration date of a held Nonconforming Use Certificate" and "[f]ailure to meet this condition will result in the automatic denial of the application for renewal of the Nonconforming Use Certificates." KCC § 8-17.10(h)(1).

To the extent Kendrick and Chaulklin rely on KCC § 8-13.2(a) and (b) as the only means by which a nonconforming use may cease, their reliance is misplaced. There is no language in KCC § 8-13.2(a) and (b) preventing the County from separately regulating nonconforming use certificates for transient vacation rentals. And even if they were in conflict, KCC § 8-17.10 specifically applying to the renewal of nonconforming use certificates for transient vacation rentals would trump. Cf. Richardson v. City & Cnty. of Honolulu, 76 Hawaiʻi 46, 54-55, 868

15

P.2d 1193, 1201-02 (1994) (noting in part, "where there is a 'plainly irreconcilable' conflict between a general and a specific statute concerning the same subject matter, the specific will be favored") (citation omitted).

Moreover, holders of nonconforming use certificates obtained under KCC § 8-17.10 must reapply annually prior to the expiration date of the nonconforming use certificate. Thus, if a nonconforming use certificate was issued pursuant to KCC § 8-17.10, the provisions of KCC § 8-17.10 apply. Kendrick and Chaulklin make no assertions that their TVNCU #4308 nonconforming use certificate for use as a transient vacation rental was not issued pursuant to KCC § 8-17.10 governing transient vacation rentals.

Finally, the 2016 letter approving the renewal of the nonconforming use certificate for TVNCU #4308 stated, "Your TVNCU is renewed to *December 12, 2017*[.]" Thus, on December 13, 2017, there was no nonconforming use certificate to renew. When Kendrick and Chaulklin sent in the renewal form and check dated December 15, 2017, which the Planning Department received on December 20, 2017, the Planning Department was obligated to deny the application as there was no existing nonconforming use certificate to renew.

In sum, the Planning Commission did not violate HRS § 46-4(a) and KCC § 8-13.2(a) when it affirmed the Planning Department's decision to deny the untimely renewal application. The Planning Commission's mixed finding and conclusion in COL 15 (providing in part that "[i]f such registration lapses as in this Contested Case, the nonconforming use is no longer a lawful use because the Subject Property lacks a 'Nonconforming Use Certificate for [that] single family vacation rental") was not clearly erroneous.  (Some brackets in original.)

**B.   Due Process Rights Were Not Violated**

For their due process argument, Kendrick and Chaulklin contend (1) they did not receive sufficient notice of the elimination of the thirty-day grace period, (2) the Planning Department's refusal of their untimely renewal interfered with their "constitutionally protected vested right to continue their lawful nonconforming use," and (3) they were not provided an opportunity to brief the alternate reason given by the Planning Commission.

"The requirements of due process are flexible and depend on many factors, but 'there are certain fundamentals of just procedure which are the same for every type of tribunal and every type of proceeding[,]' including those before administrative agencies."  Mauna Kea Anaina Hou v. Bd. of Land &

Nat. Res., 136 Hawai'i 376, 389, 363 P.3d 224, 237 (2015) (citations omitted).  "The basic elements of procedural due process are notice and an opportunity to be heard at a meaningful time and in a meaningful manner."  Id.  And, "due process of law generally prohibits decisionmakers from being biased, and more specifically, prohibits decisionmakers from prejudging matters and the appearance of having prejudged matters."  Id.  Substantive due process "guards against arbitrary and capricious government action."  DW Aina Le'a Dev., LLC v. Bridge Aina Le'a, LLC., 134 Hawai'i 187, 219, 339 P.3d 685, 717 (2014) (citation and internal quotation marks omitted).

### 1.   Notice

Before the circuit court, Kendrick and Chaulklin contended they should be given a thirty-day grace period pursuant to the 2014 Interpretive Rules.  They argued they had no notice of the elimination of the thirty-day grace period, or in the alternative, inaccurate notice.  They further argued, as they do before this court, that the new rules cannot be applied retrospectively.  Contrary to their argument, Kendrick and Chaulklin were not denied due process based on insufficient notice.

Effective April 25, 2014, the Planning Commission adopted KPAR-8-19-1, its administrative rule for "Transient

Accommodation Units[.]"  (Formatting altered.)  The Planning

Commission found that the annual renewal process lacked

specificity, including where there was a late filing:

> The requirements of the Chapter 8, Article 17 of the KCC
> lack specificity pertaining to the annual renewal process,
> including late filing, the documentation and evidence
> required to maintain a non-conforming use as defined in KCC
> Section 8-13, and the procedures necessary for a
> certificate holder to seek due process in the event of a
> non-renewal.

KPAR-8-19-1 FINDINGS.  The rule then afforded late filers a

thirty-day grace period and charged an administrative processing

fee of twice the renewal fee:

> **"Late Renewal Applications.**  Renewal applications
> received by the Planning Department within thirty
> days (30) after the deadline may renew, provided
> that in addition to the renewal fee, a
> certificate holder shall pay an administrative
> processing fee of twice the renewal fee."

KPAR-8-19-1(1)(F) (2014).[9]  But "[a]fter the thirtieth (30th) day

after the renewal deadline, the Department shall reject any

renewal application and issue a forfeiture letter."  KPAR-8-19-

1(1)(E) (2014).

However, this rule directly conflicted with the plain

language of KCC § 8-17.10(h) (2013), the ordinance in effect

when the rule was approved.  KCC § 8-17.10(h) (2013) required

the renewal application and proof be received prior to the

expiration date otherwise the application would be denied:

---

[9]  We note there are two subsections labeled "F", and the subsection
which we refer to is the first subsection "F".

> (h) The owner or lessee who has obtained a nonconforming use certificate under this section <u>shall apply to renew the nonconforming use certificate annually on the date of issuance of the nonconforming use certificate</u>.
>
> > (1) <u>Each application to renew</u> shall include proof that there is a currently valid State of Hawaiʻi general excise tax license and transient accommodations tax license for the Nonconforming use <u>and shall be received by the Department prior to the expiration date of a held non-conforming use certificate</u>. <u>Failure to meet this condition will result in the automatic denial of the application for renewal of the nonconforming use certificates</u>.

KCC § 8-17.10(h) (emphases added).

Because the thirty-day grace period directly conflicted with the ordinance, the ordinance controlled. <u>Cf. Aregger v. Dep't of Tax'n</u>, 124 Hawaiʻi 325, 329, 243 P.3d 285, 289 (App. 2010) (explaining "where there is a conflict between a court rule and a statute, the statute is controlling"); <u>see generally</u> <u>Robert D. Ferris Tr. v. Plan. Comm'n of Cnty. of Kauaʻi</u>, 138 Hawaiʻi 307, 310, 378 P.2d 1023, 1026 (App. 2016) (noting general principles of statutory construction apply to municipal ordinances).

Effective November 23, 2017, the Planning Commission amended KPAR-8-19-1 to remove the thirty-day grace period and clarify that failure to submit a timely renewal application would result in denial of the application:

> **"Late Renewal Applications.** Failure to submit an
> application to renew the [nonconforming use
> certificate] by the [nonconforming use
> certificate]'s expiration date will result in the
> automatic denial of the application. The
> Planning Department shall not accept applications
> submitted after the expiration date."

KPAR-8-19-1(C) (2017).

Thus, even if the thirty-day grace period was not invalid, by the time Kendrick and Chaulklin's application to renew was due, the rules did not provide for a thirty-day grace period. And because the rule without a thirty-day grace period was in effect at the time Kendrick and Chaulklin's application to renew was due, it was not applied retroactively.

As for notice of the change in the rule, the amended rule shows there was:

(1) "PUBLIC NOTICE: August 22, 2017 (Posted with the Office of County Clerk)";

(2) "August 22, 2017 (Publications, Garden Island Newspaper and Star Advertiser)"; and

(3) "PUBLIC HEARING: September 26, 2017."

As for notice of the KCC § 8-17.10(h) requirement to file a timely renewal application, in addition to the plain language of the ordinance, on February 9, 2016, Laureta sent an email to Kendrick's email address as listed on her 2016 (and

21

2017) renewal application, "beth@vse.com", warning that untimely or incomplete applications for renewal would not be accepted.

Based on the foregoing, Kendrick and Chaulklin were not denied due process based on insufficient notice.

2.    **Vested Property Rights**

On appeal to the circuit court, Kendrick and Chaulklin contended that the "Planning Department's Forfeiture Letter and denial of [their nonconforming use certificate] renewal packet denied [them of] their right to due process of the law and interfered with valuable and protected private property rights because [they] have a constitutionally protected vested right to continue their lawful nonconforming use."

In their answering brief to this court, Kendrick and Chaulklin argue they "proved their lawful nonconforming use by registering it," and "because the right to continue a nonconforming use arises from Hawaii's zoning enabling act and constitutional protections and not from regulatory provisions, the right cannot be lost by a county ordinance or rule."

Again, "[t]he counties of the state of Hawaiʻi 'derive their zoning powers from HRS § 46-4(a) . . . , referred to as the Zoning Enabling Act.'"  Ferris, 138 Hawaiʻi at 312, 378 P.3d at 1028 (citation omitted).  HRS § 46-4(a) provides in pertinent part, "[n]either this section nor any ordinance enacted pursuant

22

to this section shall prohibit the continued lawful use of any building or premises for any trade, industrial, residential, agricultural, or other purpose for which the building or premises is used at the time this section or the ordinance takes effect[.]"

"Under the United States and Hawaiʻi Constitutions, 'preexisting lawful uses of property are generally considered to be vested rights that zoning ordinances may not abrogate.'" Ferris, 138 Hawaiʻi at 312, 378 P.3d at 1028 (citation omitted).

But "[e]ven with respect to vested property rights, a legislature generally has the power to impose new regulatory constraints on the way in which those rights are used, or to condition their continued retention on performance of certain affirmative duties." U.S. v. Locke, 471 U.S. 84, 104 (1985); see generally Save Sunset Beach Coal. v. City & Cnty. of Honolulu, 102 Hawaiʻi 465, 474, 78 P.3d 1, 10 (2003) ("[A] zoning ordinance is a legislative act and is subject to the deference given legislative acts."). "As long as the constraint or duty imposed is a reasonable restriction designed to further legitimate legislative objectives, the legislature acts within its powers in imposing such new constraints or duties." Locke, 471 U.S. at 104.

The Supreme Court of the United States has "upheld the power of the State to condition the retention of a property right upon the performance of an act within a limited period of time" and explained that a taking does not occur where the government is not required "to compensate the owner for the consequences of his own neglect." Texaco, Inc. v. Short, 454 U.S. 516, 529-30 (1982); see also Bd. of Zoning Appeals, Bloomington Ind. v. Leisz, 702 N.E.2d 1026, 1031 (Ind. 1998) ("The power to protect the property interest rests solely with the landowner.").

Here, the County General Plan called for enacting "clear standards and permit processes for regulating alternative visitor accommodation structures and operations in Residential, Agriculture, Open, and Resort zoning districts." Ord. No. 864, § 1. The County General Plan also provided that the "[p]ermitting process should consider the cumulative impact that a large concentration of alternative visitor units can have on a residential neighborhood." Id.

In line with the County General Plan, the County Council found "the uncontrolled proliferation of vacation rentals in residential and other areas outside the Visitor Destination Area . . . is causing significant negative impacts to certain residential neighborhoods[.]" Id.

24

The ordinance provided a process to identify and register pre-existing lawful transient vacation rentals as non-conforming uses. Id. § 11. The renewal process requires proof of a valid Hawaiʻi general excise tax license and a transient accommodations tax license, and allows re-inspection of the property to ensure compliance with other provisions of the chapter. KCC § 8-17.10. Imposing an affirmative duty on the holders of the nonconforming use permit to submit their renewal application on time establishes a reasonable and efficient process by which the County is able to receive the necessary documents and ensure compliance with the chapter.

Hawaiʻi courts are directed to liberally construe the powers granted to counties under HRS § 46-4(a) in favor of the counties and in a manner "to promote the orderly development of each county . . . in accordance with a long-range, comprehensive general plan to ensure the greatest benefit for the State as a whole." HRS § 46-4(a). And this court has previously determined that the "express purpose of KCC § 8-17.10 . . . is consistent with the requirements of HRS § 46-4(a) as well as the constitutional protection provided to property owners with vested rights to pre-existing lawful uses of their property." Ferris, 138 Hawaiʻi at 313, 378 P.3d at 1029; Campos v. Plan. Comm'n, 153 Hawaiʻi 386, 400, 539 P.3d 170, 184 (App. 2023).

25

Thus, the Planning Commission did not abrogate or interfere with Kendrick and Chaulklin's vested rights when it denied their untimely renewal application.

### 3. Alternate Theory

On appeal to the circuit court, Kendrick and Chaulklin contended the Planning Commission relied on an alternate theory "to deny Appellants' renewal packet" when it concluded that "even if the [thirty-day] Grace Period [associated with the 2014 Interpretive Rules] were available to Petitioners, their Renewal Application was incomplete when received by the Planning Department on December 21, 2017 because it did not include the administrative processing fee."[10] (Footnote omitted.) Kendrick and Chaulklin argued that this violated their "right to due process because the Planning Department only gave one reason for denying the renewal packet, that it was untimely." As a result, Kendrick and Chaulklin contended that they "were never given the opportunity to brief that subject on appeal to the Planning Commission."

However, the attorney for Kendrick and Chaulklin raised the issue in oral argument before the Planning Commission. For context, the thirty-day grace period rule imposed an "administrative processing fee of twice the renewal

---

[10] The December 21, 2017 letter from the Planning Department states they received the renewal document packet on December 20, 2017.

fee." KPAR-8-19-1 (2014). Thus, if Kendrick and Chaulklin were genuinely relying on the thirty-day grace period when they sent their untimely application and check to the Planning Department, they presumably would have included the mandatory administrative processing fee, which they did not. In any event, as mentioned, Kendrick and Chaulklin had an opportunity to address this issue in their oral argument before the Planning Commission.

## IV. CONCLUSION

Based on the foregoing, we reverse the circuit court's July 28, 2020 "Findings of Fact and Conclusions of Law, Decision and Order" and August 24, 2020 Final Judgment, and affirm the November 20, 2018 Planning Commission Decision.

On the briefs:

Chris Donahoe,
Deputy County Attorney,
for Respondents-Appellees-
Appellants.

Gregory W. Kugle,
Joanna C. Zeigler,
(Damon Key Leong Kupchak
Hastert),
for Petitioners-Appellants-
Appellees.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Karen T. Nakasone
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge

27